Earreserryil and Annamma BERLY, Individually and as Representatives of the Estate of Anecletas Berly, and Transportation Insurance Company, Intervenor, Appellants,

v.

D & L SECURITY SERVICES AND INVESTIGATIONS, INC. and Elbert Phillips, Appellees.

No. 05–92–02510–CV.

Court of Appeals of Texas, Dallas.

Feb. 25, 1994.

Rehearing Denied April 11, 1994.

David R. Weiner, David L. Kern and Jeffrey M. Lust, Dallas, for appellants.

John Holman Barr and George Nicholas, Dallas, for appellees.

Before THOMAS, OVARD and BARBER, JJ.

## OPINION

OVARD, Justice.

Appellants Earreserryil and Annamma Berly, individually and as representatives of the estate of Anecletas Berly, and Transportation Insurance Company appeal from a take-nothing summary judgment in favor of appellees, D & L Security Services and Investigations, Inc. and Elbert Phillips.[1] We reverse and remand.

Anecletas Berly (Berly) was an employee of Kroger Corporation, Inc.[2] (Kroger), a grocery store chain. Berly worked as a cashier at Kroger Store No. 602 (the store). The

1. Earreserryil and Annamma Berly, individually and as representatives of Anecletas Berly, and Transportation Insurance Company will be referred to collectively as "appellants." The Berlys will sometimes be referred to as "the Berly appellants." Transportation Insurance Company will sometimes be referred to as "Transportation." D & L Security Services and Investigations, Inc. and Elbert Phillips will be collectively referred to as appellees. D & L Security Services and Investigations, Inc. will sometimes be referred to as "D & L," while Elbert Phillips will sometimes be referred to as "Phillips."

2. Kroger was originally named as a co-defendant in this lawsuit, but was later nonsuited.

store was located at 1515 South Buckner Boulevard in Pleasant Grove, Dallas County. D & L provided security services to the store. Phillips worked for D & L as a security guard. On January 4, 1991, while on duty at the store, Phillips observed a young man (shoplifter) stealing batteries. Phillips asked the shoplifter to accompany him upstairs to the store manager's office. While attempting to handcuff him, a scuffle ensued. The shoplifter pulled a handgun out of his jacket and shot Phillips in the eye. As the man began to flee, he met Berly on the stairs. He shot Berly in the head, killing him.

On July 16, 1991, the Berly appellants sued appellees under the Texas Wrongful Death and Survival Statutes,[3] alleging that appellees' negligence resulted in Berly's death. The negligent acts complained of included: (1) after voluntarily undertaking to provide security for the store, D & L acted negligently in failing to properly investigate the nature and extent of criminal activity in the vicinity of the store, failing to provide adequate security to protect store employees from criminal attack, and failing to properly hire and supervise the security guard for the store; and (2) Phillips used improper procedures in apprehending the shoplifter.

Appellees later moved for summary judgment, contending Berly's death was not proximately caused by their actions; appellees' actions were legally privileged under applicable Texas law; and appellees had no duty, as a matter of law, to protect against the criminal acts of a third person. On June 25, 1992, Transportation petitioned the court to intervene in the lawsuit, which the trial court permitted.[4] On August 18, 1992, the trial court granted a partial motion for summary

judgment against the Berly appellants without specifying the grounds for doing so. On September 20, 1992, the court entered a final judgment in the case. The final judgment, in addition to incorporating the earlier partial motion for summary judgment against the Berly appellants, granted a take-nothing summary judgment against Transportation. The court stated in its final judgment that summary judgment against Transportation was proper because appellees owed no duty to protect against the criminal acts of third parties. Because we conclude the summary judgment evidence raised a genuine issue of material fact as to duty, proximate cause, and privilege, we reverse and remand.

## LEGAL ISSUES PRESENTED

Appellants contend that a material fact question is raised by summary judgment proof indicating that the shoplifter's conduct could reasonably have been foreseen and whether a duty arose out of this foreseeability.[5] Appellants also contend there is a material fact issue as to whether appellees' allegedly negligent apprehension of the shoplifter proximately caused Berly's death. Finally, appellants argue the trial court erred in granting summary judgment on the grounds that appellees' actions were legally privileged either under the public policy of Texas or under section 124.001 of the Texas Civil Practice and Remedies Code. TEX.CIV. PRAC. & REM.CODE ANN. § 124.001 (Vernon 1986).[6]

## THE SUMMARY JUDGMENT PROCEEDING

### 1. Standard of Review

 A summary judgment seeks to eliminate patently unmeritorious claims and

---

3. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 71.001–.011 (Vernon 1986) ("wrongful death" statute); TEX. CIV.PRAC. & REM.CODE ANN. § 71.021 (Vernon 1986) ("survival" statute).

4. Transportation entered this case seeking to protect its subrogation interest in the Berly appellants' claim. Transportation had issued a workers' compensation policy to Kroger which was in force when Berly was killed. The Berly appellants made a claim under the policy and, at the time it filed the petition in intervention, Transportation had paid the Berlys $23,581.36 in benefits.

5. Specifically, appellants assert that if a duty did arise, it is a duty "to control or avoid increasing the danger from a third-party's criminal conduct that appellees at least partially created." *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 312 (Tex. 1987).

6. In their brief, appellants state in their first point of error that "[t]he trial court erred in granting [a]ppellees' motion for summary judgment." However, because we reverse the trial court judgment based upon appellants' three specific points of error, it is unnecessary to consider this generalized point.

untenable defenses, not to deny a party its right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952). The standard of review in a summary judgment case is whether the movant met his burden for summary judgment by establishing there exists no genuine issue of material fact and that he is entitled to a judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant. *Id.* at 548–49. Every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubt will be resolved in his favor. *Id.* at 549. In a summary judgment proceeding, the defendant, as movant, must either (1) disprove at least one element of each of the plaintiff's theories of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex.1979). A summary judgment for the defendant disposing of the entire case is proper only if, as a matter of law, viewing the evidence in the light most favorable to the plaintiff, the plaintiff could not succeed upon any theory pleaded. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex. 1983).

■ Where a trial court enters a summary judgment order that does not specify the particular grounds on which it is based, the party appealing must show that each independent argument alleged in the motion for summary judgment is insufficient to support the trial court's order. *Insurance Co. of N. Am. v. Security Ins. Co.,* 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ).

## 2. Applicable Law—Negligence

### a. Duty

■ Negligence consists of three essential elements—a legal duty owed by one person to another, a breach of that duty, and damages proximately resulting from the breach. *See El Chico Corp.,* 732 S.W.2d at 311. Duty is the threshold inquiry; a plaintiff must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort. *Id.* at 311.

■ Duty is the function of several interrelated factors; the foremost consideration is foreseeability of the risk of harm. *See id.* The existence of a legal duty under a given set of facts and circumstances is essentially a question of law for the court. *Mitchell v. Missouri–Kansas–Texas R.R. Co.,* 786 S.W.2d 659, 662 (Tex.), *cert. denied,* 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990). While foreseeability as an element of duty may frequently be determined as a matter of law, in some instances it involves the resolution of disputed facts or inferences which are inappropriate for legal resolution. *Id.* at 662.

■ Determinations of foreseeability can properly involve more than actual knowledge of particular incidents and cannot necessarily be divorced from common knowledge. *See El Chico Corp.,* 732 S.W.2d at 311 (discussing common knowledge regarding effects of alcohol consumption in context of foreseeability). Foreseeability should be measured in the light of common or ordinary experience. *See Hendricks v. Todora,* 722 S.W.2d 458, 461 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

### b. Proximate Cause

■ The two elements of proximate cause are cause in fact and foreseeability. *City of Gladewater v. Pike,* 727 S.W.2d 514, 517 (Tex.1987). Cause in fact means that the act or omission was a substantial factor in bringing about the injury and without it, the harm would not have occurred. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex. 1992); *City of Gladewater,* 727 S.W.2d at 517; *Nixon,* 690 S.W.2d at 549. The plaintiff need not exclude all possibilities; it is sufficient to prove that the greater probability is that the defendant's conduct, alone or in contribution with others, was the cause of the harm. *El Chico Corp.,* 732 S.W.2d at 313. There may be more than one proximate cause. *Id.* at 313–14.

■ Foreseeability means that the actor, as a person of ordinary intelligence, should

have anticipated the dangers that his negligent act created for others. *Travis*, 830 S.W.2d at 98; *Nixon*, 690 S.W.2d at 549–550. Foreseeability does not require the actor to anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence. *Travis*, 830 S.W.2d at 98. All that is required is that the injury be of such a general character as might reasonably have been anticipated, and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen. *Nixon*, 690 S.W.2d at 551.

■ Although the criminal conduct of a third party may be an intervening, superseding cause that relieves the negligent actor from liability, the actor's negligence is not superseded and will not be excused when the criminal conduct is a foreseeable result of such negligence. *Travis*, 830 S.W.2d at 98. When the intervening illegal act is foreseeable, it does not negate the continuing proximate causation and consequent liability of the initial actor. *Id.* (citing *Nixon*, 690 S.W.2d at 550). The determination of proximate cause and intervening cause rests with the jury. *See El Chico Corp.*, 732 S.W.2d at 314. Issues of concurrent causation should generally be made on a case-by-case basis, not as a rule of law denying recovery in all cases. *See id.*

### c. Privilege to Detain Suspected Shoplifters

Section 124.001 of the Texas Civil Practice and Remedies Code provides that when an individual reasonably believes that another has stolen or is attempting to steal property, he is privileged to detain the suspect in a reasonable manner and for a reasonable length of time in order to investigate the ownership of the property. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 124.001 (Vernon 1986). This provision embodies the law of probable cause for the purpose of detaining a suspected shoplifter. *See* Jerry A. Gibson, *The Developing Law of Tort Liability for Non–Physical Harm: A Guide for the Texas Practitioner*, 18 ST. MARY'S L.J. 899, 935 (1987).

Additionally, for public policy reasons, Texas courts have accorded citizens the right to take action in defense of their property. *See Helms v. Harris*, 281 S.W.2d 770, 771–72 (Tex.Civ.App.—Fort Worth 1955, writ ref'd n.r.e.). Such action must, however, be done in a reasonable manner. *See id.* Generally, the question of reasonableness is one for the jury. *See id.* at 772.

### SUMMARY JUDGMENT EVIDENCE

Appellees presented the following summary judgment evidence. Calvin Bernard, president of D & L, stated in an affidavit that D & L provides security guards to twenty-five grocery stores in the Dallas area. Bernard said that in the two years prior to the Berly incident, there were no occurrences of a shoplifting suspect using a firearm to shoot a security guard, store employee, or customer. Bernard opined that the Berly incident was "an extremely rare event and the occurrence of a shoplifting suspect carrying and using a firearm could not be reasonably foreseen in the light of common or ordinary experience."

Elbert Phillips, the security guard for D & L, testified in his deposition that on the day of the incident, he was upstairs in the store's observation room, observing shoppers through a two-way mirror. He saw a shoplifter put batteries in his pocket. The shoplifter approached the checkout counter as if he were going to pay for them. The shoplifter then put more batteries in his pocket, passed the checkout counter and headed for the store's exit door. Phillips descended into the retail area of the store. He stopped the shoplifter at the exit door and told him he needed to speak with him upstairs. The shoplifter nodded his head and accompanied Phillips upstairs to the store manager's office. The shoplifter was a male, approximately seventeen years old. He was of average height and wore a light jacket. Phillips testified that in the manager's office, he searched the shoplifter's left and right jacket pockets, where he found the batteries. Phillips also searched the man's front and back pants pockets. At this point, Phillips recalled, the shoplifter "got kind of carried away, kind of upset, not mad upset but cry-

ing." The man asked Phillips not to call the police. Phillips attempted to handcuff the shoplifter. Phillips put a handcuff on the man's right hand, and "brought his left arm back and he jerked it away and I looked over and I saw the gun [7] and that was it." The gun was in the shoplifter's left hand. The shoplifter shot Phillips in the eye.

Rebecca Lynne Humphries, a store employee, testified in her deposition that she was on the telephone in the office when the incident occurred. Phillips "put him [the shoplifter] up against the desk." Humphries was standing next to the desk. Humphries testified that Phillips did not search the shoplifter.[8] Rather, the shoplifter "reached into his back pocket and got out a package of batteries, and he said to just let him pay for it; and Elbert [Phillips] took his hand again and said '[j]ust keep your hands out of your pockets,' and Elbert [Phillips] got out his handcuffs so he could handcuff him." At the point that Phillips began to handcuff the shoplifter, Phillips was positioned in back of the man. The man was still "up against the desk." Humphries testified Phillips never got the handcuffs on the shoplifter. Phillips dropped the handcuffs. Humphries was not sure whether the struggle between the two men began "while he was trying to put the handcuffs on, or if it was directly after Elbert [Phillips] had dropped the handcuffs." The men made "a lot of noise" as they struggled with each other.

After the scuffle began, Humphries hung up the telephone. She bent down to pick up the handcuffs. One of the men, she was not sure which, was standing on the handcuffs. When she realized she could not pick up the handcuffs, she turned on the intercom and paged "Mr. Booth" to come upstairs. She hung up the intercom. As he struggled, the shoplifter "reached out for the bookshelf that was on the desk opposite the one I was sitting beside, and I thought the bookshelf was going to fall over." Humphries reached up to keep the shelf from falling. As she held the bookshelf, she "started hearing the gunshots, and I just stood there." The shop-

lifter fled. Phillips was on the floor, attempting to draw his gun. He was bleeding. Humphries told Phillips to sit down. She then called 911. She was unsure if gunshots were fired after she called 911. She was also unsure how many shots in all were fired. While she was still on the telephone, she heard another employee screaming Berly's name. She turned around and saw Berly lying at the top of the stairs. She believed that Berly was dead.

A store employee, Jimmy Lewis Booth, testified in his deposition that after the shoplifter shot Phillips and Berly, another store employee, Minu, approached the store manager's office. The shoplifter fired at Minu, but missed. There was a relatively long timespan between the first shot, which wounded Phillips, and the second shot, which killed Berly, as compared to the timespan between the shot that killed Berly and the errant shot that was fired at Minu.

Appellees also included portions of the deposition of appellants' expert witness, Dr. William J. Bopp, as summary judgment evidence. Bopp is a professor of criminal justice at Florida Atlantic University. Bopp testified that it is not necessary to handcuff or search a shoplifter. Bopp stated that "it's probably undesirable to have an armed person arrest shoplifters unless he's an off-duty police officer." Bopp said that generally, shoplifters do not commit crimes against persons. Bopp also testified that police officers are often shot while trying to effectuate arrests. Bopp stated the reality of our society is that "you need to assume everybody is armed nowadays." Bopp testified it is not foreseeable that death will arise out of a shoplifting incident.

Lawrence W. Sherman, a professor of criminology at the University of Maryland, stated in his affidavit that Berly's death by a shoplifter-turned-assailant was not reasonably foreseeable. Sherman said that an estimated three shoplifting-related homicides occurred in the United States during 1990. He

---

7. The gun was a small .25-caliber handgun.

8. In their motion for summary judgment, appellces stated that it was an undisputed fact that the

shoplifter, not Berly, "took stolen batteries out of his pocket."

opined that Berly's death was an extraordinary event, or "freak accident."

Virgil Lee Sparks, a homicide detective with the Dallas Police Department assigned to the Berly case, testified in his deposition that "there's no one area in Dallas that is safer or less crime[-]free than another." Sparks stated that Phillips did not deviate from doing what a reasonable security guard would have done under the circumstances. Sparks stated that, based upon what witnesses told investigating detectives, Berly ran toward the stairway when he heard the scuffling, prior to the time the shoplifter shot Phillips.[9]

Benjamin J. Adamcik, a retired police detective and vice-president of loss prevention for Cullum Companies,[10] stated in an affidavit that, in his experience, he had never encountered a shoplifter who used a handgun or firearm to resist apprehension or to facilitate escape after apprehension. Adamcik stated that "[s]hoplifting is a crime of stealth by a sneak thief and the mentality of this type of criminal and methods of this type of crime do not involve the use [of] handguns or firearms." Adamcik opined that the proper method for apprehending a shoplifting suspect and the method recognized as the industry standard in Dallas County is as follows:

(1) Security approaches the shoplifting suspect after suspect has cleared the checking area and while suspect is in process of exiting the store or security approaches suspect within the store and prior to suspect clearing checking area if shoplifting intent is clearly demonstrated by suspect concealing merchandise ...

(2) Security requests that the suspect accompany security to the manager's office and security escorts suspect to the manager's office.

(3) At security's discretion, security handcuffs suspect in the manager's office and *thereafter searches suspect.* Security does not handcuff the suspect on the store floor or in the entrance/exit areas since this improper procedure *will increase the risk of harm to the mass of people utilizing these areas if the suspect resists.*

(Emphases added.) Adamcik stated that there does not exist a method for handcuffing a criminal suspect that is one-hundred-percent effective and safe if a criminal suspect resists. He said that the fact that highly trained and experienced police officers are occasionally overcome, injured, or killed in the course of handcuffing criminal suspects demonstrates this point.

Appellants presented the following evidence in their response to appellees' motion for summary judgment: Dallas Police Department offense reports; the deposition testimony of expert witness, Dr. William J. Bopp; and policy and procedure manuals issued by Kroger and by D & L.

Bopp testified that he had read at least forty-two Dallas Police Department offense reports (beat reports) of crimes which occurred at the store and immediately around the store. The beat reports included accounts of the following criminal activities which occurred at the store during the two years prior to the Berly shooting. On January 3, 1990, at 1:00 p.m., a man with a shotgun shot six times at a vehicle in the parking lot. On March 29, 1990, a shoplifter hit a store security guard in the stomach and the head. The guard had to be assisted by other employees and even customers in handcuffing the shoplifter. On May 26, 1990, a suspect grabbed $1400 from the cash register and tried to flee. He resisted the store employees who attempted to stop him. They subdued him, thereafter searched him, and found a twelve-inch knife concealed in his waistband. There was an unspecified injury. On June 27, 1990, at 11:20 p.m., individuals armed with a firearm held up a woman who was inside her car in the store parking lot. The individuals forced her out of the car, attempting to steal it. When the car did not start, they fled. On November 5, 1990, a shoplifter hit a store employee who was attempting to apprehend him.

9. In their motion for summary judgment, appellees stated that it is an undisputed fact that only *after* the shoplifter shot Phillips, Berly proceeded up the short flight of stairs toward the office.

10. Cullum Companies owns a chain of grocery stores.

Some of the incidents described in the beat reports involved Phillips. On February 1, 1989 at 8:00 p.m., a shoplifter pulled a screwdriver from his pants and brandished it at Phillips. Phillips knocked the shoplifter to the ground and took him into custody. On February 1, 1990, Phillips followed a shoplifter out of the store and confronted him. The shoplifter punched Phillips in the mouth. Another security guard came to his aid. He subdued the man with a stun gun and took him into custody. During the process, a plate glass window was broken. Phillips sustained a golfball-sized knot on his head and a "busted lip." On June 24, 1990 at 1:30 a.m., an individual stole money from the checkout counter. Phillips confronted the man outside the store, handcuffed him, thereafter searched him, and found a double-edged dagger concealed in his waistband. On November 17, 1990, at 7:00 p.m., Phillips and another security guard detained an individual outside the store whom they suspected had stolen batteries. The suspect assaulted the other security guard. The guards apprehended the individual after he attempted to flee. There was an unspecified injury in that incident.

Bopp testified that in light of the store's history of criminal activity, a security guard working there should pay close attention to detail and follow all the rules of the store and his security firm. Bopp opined that, in the instant case, Phillips violated procedures and policies promulgated by Kroger and D & L. Bopp also stated that over the past twenty years, the retail store industry had developed certain industry standards concerning the investigation and apprehension of shoplifters. In Bopp's opinion, Phillips and D & L ran afoul of certain industry standards in the manner in which Phillips stopped, searched, and attempted to handcuff the shoplifter. These alleged violations included:

(1) Phillips should not have secreted himself within the observation room, but should have patrolled "out there on the floor where he can be seen and observed by customers" [violation of D & L instructions].

(2) Phillips stopped the shoplifter at the exit doors, rather than outside the exit [violation of Kroger policy manual, industry standards].

(3) Phillips apprehended the shoplifter alone, without "backup" [violation of Kroger policy manual, industry standards [11]].

(4) Phillips should not have performed a body search of the shoplifter [violation of Kroger policy manual [12]].

(5) Phillips should not have used force in the apprehension. He should not have "held the shoplifter's hands behind him when he escorted him into the room, [and] put the shoplifter up against the desk" [violation of Kroger policy manual].

(6) Even if the use of force were permitted by the Kroger manual, Phillips used improper techniques in searching and handcuffing the shoplifter. Phillips should have positioned the shoplifter against a wall, "off balance" with feet spread when searching him; should have searched with a "backup" present; should not have lost sight of one of the shoplifter's hands "because when he saw the hand again, it had a weapon in it" [violations of industry standards].

Bopp also alleged that D & L did not train Phillips on how to handcuff and arrest shoplifting suspects before assigning Phillips to the store. Bopp opined that the incident was "preventable" if the correct procedures had been used in apprehending the shoplifter. Bopp stated that "searching a person and handcuffing a person is one of the most sensitive, potentially dangerous encounters you're going to engage in and you got to do it promptly and you got to do it correctly." Bopp opined that as a result of Phillips's failure to follow the policy manuals of D & L

11. Bopp explained certain segments of the retail store industry have not adopted this standard. For example, the convenience store industry does not recognize it because there is ordinarily only one clerk working within each store, and adherence to this standard would be impracticable.

12. Bopp stated that the retail store industry is divided in its opinion on whether to search a shoplifting suspect. Bopp opined that "about half the premises that I'm familiar with say you don't ever search, in fact, you don't ever touch."

and Kroger, as well as industry standards, Berly was killed.

## THE PARTIES' CONTENTIONS

### 1. Appellants' Argument

**Duty.** In their second point of error, appellants contend the trial court erred in granting summary judgment for appellees based on no duty because appellees failed to meet their burden to conclusively negate foreseeability. Appellants argue that in their response to appellees' motion for summary judgment, they offered police beat reports and expert testimony showing there had been numerous criminal incidents, involving varying degrees of violence and force, either at or around the store over the two-year period immediately preceding the incident in which Berly was killed. Thus, appellants assert, appellees were on notice that a security problem of potentially dangerous proportions existed at the store, and an unresolved fact question exists as to whether a legal duty arose out of these incidents. *See Nixon,* 690 S.W.2d at 550.

**Proximate Cause.** In their third point of error, appellants contend appellees failed to carry their summary judgment burden of conclusively establishing the absence of proximate cause. Appellants argue a material fact issue exists as to whether Phillips committed a series of procedural errors that resulted directly in Berly's death.

**Privilege.** In a fourth point of error, appellants contend section 124.001 of the Texas Civil Practice and Remedies Code has no application to a claim by a third party for injuries sustained during the course of an apprehension or detention of a theft suspect. Appellants refer us to a Maryland appellate court decision as authority. *See Giant Food, Inc. v. Scherry,* 51 Md.App. 586, 589–91, 444 A.2d 483, 486 (1982) (security guard's privilege with respect to use of reasonable force against robber does not end inquiry as to responsibility to third parties).

Appellants also refer us to *Helms v. Harris* for the proposition that a public policy-based privilege allows for immunity from liability to a third person for any harm unintentionally done to the third person *unless* the

actor realizes or should realize that his act creates an unreasonable risk of causing harm. *See Helms,* 281 S.W.2d at 772. Appellants argue that they "specifically controverted any contention that [a]ppellees were not negligent with expert testimony raising genuine issues of material fact as to [a]ppellees' negligence."

### 2. Appellees' Argument

**Duty.** Appellees base their argument that they had no duty to appellants as a matter of law on this Court's decision in *Hendricks v. Todora. See Hendricks,* 722 S.W.2d at 465. In *Hendricks,* customers were injured when a car driven by a drunken driver crashed through a glass wall of the area where the customers awaited entrance to a bar and restaurant. They sued the owner and lessor of the premises, the lessee, and others. In their motion for summary judgment, the defendants asserted that, as a matter of law, they had no duty to protect the invitees against the unforeseeable criminal conduct of a third party. *See id.* at 459. The plaintiffs contended a fact question was raised by summary judgment proof indicating this conduct could reasonably have been foreseen. *See id.* at 459–460. We held that without evidence of similar criminal or reckless conduct, neither the lessor nor the lessee had the duty to protect customers against such an extraordinary and unprecedented occurrence as that shown by the undisputed summary judgment proof. *See id.* at 465. Appellees contend that, because the uncontroverted summary judgment evidence showed that no harm *by use of a firearm* had ever been inflicted on an invitee at the store during a shoplifting incident, there was no foreseeability, as a matter of law, and thus, no duty.

**Proximate Cause.** Appellees argue that, even if one presumes appellees owed Berly a legal duty, appellees' conduct did not proximately cause Berly's death. Appellees argue Berly's death was caused by the intentional criminal act of a third party, and not by Phillips's search and handcuffing procedures. Appellees refer us to *Helms v. Harris,* where a store owner tried to prevent a robbery in his store by attempting to wrest the robber's gun away from him. *See Helms,* 281 S.W.2d

at 771. The robber shot a patron during his escape. *See id.* After examining the facts of this jury case, the appellate court held that it would be unreasonable to infer that the shooting was in response to the owner's resistance. Instead, the only reasonable inference is that the shooting was caused by the robber's fear that the patron's actions would prevent his escape. *See id.* Appellees argue there was no causal connection between Phillips's actions and Berly's shooting because the shooting did not occur during the apprehension, but during the shoplifter's escape.

**Privilege.** Appellees argue the deposition testimony of Virgil Sparks established that Phillips acted reasonably in apprehending the shoplifter. Thus, under either the statutory or public policy-based privilege to act in defense of one's property, they contend summary judgment was properly granted.

## APPLICATION OF LAW TO FACTS

### 1. Unresolved Fact Issues as to Duty

■ We must consider whether appellees' summary judgment evidence conclusively establishes that criminal acts like those involved here were not foreseeable. Under the summary judgment standard of review, the evidence that favors appellants will be taken as true. *Nixon,* 690 S.W.2d at 548–49. The summary judgment evidence, consisting of beat reports, depositions, affidavits, and policy and procedural manuals, is contradictory on a number of issues.

Relying primarily on *Hendricks,* appellees argue that because none of the prior incidents of criminal activity involved shoplifters wielding firearms, they had no duty to protect against shoplifters who turn into gunwielding assailants. We disagree. In *Hendricks,* we based our holding in part on a determination that, even if all of the plaintiffs' evidence was taken as true, there was no evidence of any previous *reckless or criminal conduct* threatening the safety of invitees at the site of the incident. *See Hendricks,* 722 S.W.2d at 462–63. However, in this case, police department beat reports supporting appellants' response to the motion for summary judgment show a variety of crimes occurred at the store, including

events involving force and violence. In *Hendricks,* we concluded that the undisputed summary judgment evidence showed that a drunken driver crashing his car through a restaurant wall was an extraordinary event. However, here, the depositions and affidavits of various expert witnesses, as well as the beat reports, established a genuine issue of material fact as to whether apprehension of a shoplifter that ended in death to a bystander was an extraordinary event, or whether, under the facts and circumstances of this case, it was reasonably foreseeable.

■ The common law of torts, including the concept of duty, must evolve in light of the changing conditions and circumstances of society. *El Chico Corp.,* 732 S.W.2d at 310–11; *see also Reagan v. Vaughn,* 804 S.W.2d 463, 465 (Tex.1990); *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 310 (Tex.1983). It is a matter of general and common knowledge that violent crime has become a significant and pervasive social problem. Moreover, the common law recognizes the duty to take affirmative action to control or avoid increasing the danger from another's conduct that the actor has at least partially created. *See El Chico Corp.,* 732 S.W.2d at 312; *Gutierrez v. Scripps–Howard,* 823 S.W.2d 696, 699 (Tex. App.—El Paso 1992, writ denied). "Changing social conditions lead constantly to the recognition of new duties. No better general statement can be made, than the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists." *Otis Eng'g Corp.,* 668 S.W.2d at 310. We hold that the summary judgment evidence raised a genuine issue of material fact as to duty.

### 2. Unresolved Fact Issues as to Proximate Cause

The two elements of proximate cause are cause in fact and foreseeability. *City of Gladewater,* 727 S.W.2d at 517. Appellants' summary judgment evidence showed that there was prior criminal activity in the area, some of which involved the use of force and violence. A fact issue is raised on the foreseeability of criminal activity when there is evidence of specific crimes on or near the

area where the event took place. *Nixon,* 690 S.W.2d at 550.

Additionally, appellees' expert witness Adamcik stated that if a suspect resists, there is a risk of harm to third parties. Appellants introduced Kroger's policy manual, titled "Shoplifting—Detection, Apprehension, Prosecution—A Guide." The Kroger manual anticipates that injury to a person could occur during the apprehension of a shoplifter. It provides that the one making the stop should notify a supervisor if during apprehension, "there is an injury to any person requiring medical attention (including first aid)." Foreseeability does not require the actor to anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence. *Travis,* 830 S.W.2d at 98. All that is required is that the injury be of such a general character as might reasonably have been anticipated, and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen. *Nixon,* 690 S.W.2d at 551. We hold that there is a genuine issue of material fact regarding the foreseeability of the shoplifter's conduct as it pertains to proximate cause.

We next consider whether the alleged negligence on the part of appellees could have been the cause in fact of Berly's death. To find cause in fact, the negligent act or omission must be a substantial factor in bringing about the injury and without which harm would not have incurred. *Travis,* 830 S.W.2d at 98. We must resolve any doubts in favor of the nonmovant.

Phillips testified in his deposition that on the day of the incident, he was concealed in the store's observation room, observing shoppers through a two-way mirror. Dr. Bopp testified that Phillips's concealment violated D & L procedural rules.

The Kroger policy manual prescribed that the security guard should stop shoplifters, if possible, "outside the store and at a place out of hearing of other customers." Phillips stopped the shoplifter before he cleared the exit doors, and in the presence of shoppers. The Kroger manual requires that the stop of shoplifters must be made "in the presence of and within hearing of" another employee. Phillips made the stop without the assistance of another employee.

The Kroger policy manual provides that use of physical force is neither expected nor required in the apprehension of shoplifters. D & L rules provide that a security guard should not "physically intimidate the suspect." Phillips used force when he compelled the shoplifter to lean against the desk, put his hands behind his back, and submit to handcuffing.

The Kroger policy manual proscribes searching "the person or the personal effects of the shoplifter." The manual requires that the police be called to perform that function. Dr. Bopp testified that half of the retail store industry disfavors searching—and even touching—shoplifting suspects. Phillips performed a search of the shoplifter's person and effects.

Appellees' own expert witness Adamcik stated in an affidavit that a security guard should handcuff the suspect and *thereafter* search him. Phillips testified that he searched the shoplifter *before* securing and handcuffing him. Moreover, Adamcik's opinion statements (as well as those of appellants' expert witness, Dr. Bopp) suggest that physically searching a shoplifter is a sensitive and potentially dangerous activity and that the guard should conduct the procedure in a controlled and pro-active manner. Appellants' expert witness, Dr. Bopp, testified that if Phillips had used proper procedures in apprehending the shoplifter, the crime would have been deterred. We conclude the summary judgment evidence raises a fact issue as to whether, how and when the suspect should have been searched.

Viewing the summary judgment evidence as we must, drawing all reasonable inferences in favor of appellants, we hold that a reasonable inference exists that, but for appellees' alleged failure to use proper procedures in stopping, searching, and handcuffing the shoplifter, this crime would not have taken place. We sustain appellants' third point of error. *See Nixon,* 690 S.W.2d at 549.

### 3. Whether Appellees Conclusively Established Appellees' Actions Were Privileged

■ Under the public policy of Texas and by statute, a person may act in defense of his property unless the acts create an unreasonable risk of causing harm to innocent third parties. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 124.001 (Vernon 1986); *Helms*, 281 S.W.2d at 772. We have already determined that the summary judgment evidence raised material fact issues as to the reasonableness of Phillips's actions in apprehending the shoplifter. *See Travis*, 830 S.W.2d at 98 (police officers must balance risk to public with their duty to enforce law to choose appropriate course of conduct). We sustain appellants' fourth point of error.

### APPELLEES' REPLY POINT OF ERROR

■ In a reply point of error relating specifically to Transportation, appellees assert that the trial court's grant of summary judgment should be upheld on the grounds that Transportation failed to "establish genuine issues of fact on each element of its claim for subrogation." [13] Appellees' argument is misplaced. When the defendant moves for summary judgment, he must discharge the burden of either (1) disproving at least one element of the plaintiff's cause of action, or (2) pleading and conclusively establishing each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *See Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). Once the moving party establishes his right to summary judgment, only then must the nonmovant respond by presenting to the trial court any genuine issue of material fact that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Because appellees sought a summary judgment against Transportation, they had the initial burden of presenting competent summary judgment evidence to disprove at least one element of Transportation's subrogation claim. The record reflects that appellees did not present any summary judgment evidence to negate an element of Transportation's subrogation claim and entitle it to summary judgment on this ground. Transportation, as the nonmovant, had no burden to present to the trial court any genuine issue of material fact or supporting evidence. We overrule appellees' reply point.

We reverse the trial court's judgment and remand the case to that court.

---

13. Specifically, appellees argue Transportation did not offer any summary judgment evidence regarding: authority to transact business in Texas; authority to provide workers' compensation insurance to Texas workers under Texas workers compensation law; any entitlement to subrogation; or the amount of the medical payments and indemnity expenses for which it claims a subrogation right.