**Konstantinos VENETOULIAS and Hellenic Investments, Inc., Appellants,**

v.

**Tressie O'BRIEN, Appellee.**

**No. 14–94–00128–CV.**

Court of Appeals of Texas, Houston, (14th Dist.).

Oct. 5, 1995.

Rehearing Overruled Nov. 2, 1995.

---

1. Effective January 1, 1996, the Legislature amended Section 12.42(d) to exclude state jail

felonies.

Michael Maness, Houston, for appellants.

Timothy H. Pletcher, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## MAJORITY OPINION

LEE, Justice.

Appellants, Konstantinos Venetoulias and Hellenic Investments, Inc., appeal a judgment of the trial court holding each of the parties one-third negligent for injuries sustained by appellee, Tressie O'Brien. O'Brien was injured in a one car accident while she was intoxicated. The trial court found Hellenic liable under the Texas Dram Shop Act[1] and Venetoulias liable for negligence. The trial court awarded O'Brien approximately $57,500 in actual and punitive damages. Appellants bring six points of error complaining of the sufficiency of the evidence to support the trial court's findings that Hellenic was liable under the Dram Shop Act and that Venetoulias was negligent. We affirm.

In their first three points of error, appellants argue that the evidence is factually insufficient. When confronted with a complaint that the evidence is factually insufficient, we are to review all of the evidence and determine if the weight of the record supports the findings. *Plas–Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). Only if we conclude that the verdict is so against the great weight and preponderance of the evidence as be manifestly unjust,

will we sustain a factual insufficiency point and order a new trial. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951).

Hellenic's liability to O'Brien is based on the Dram Shop Act. A person who is provided, sold or served alcoholic beverages and injures himself may bring an action against the establishment which provided the alcoholic beverage. TEX.ALCO.BEV.CODE ANN. § 2.02 (Vernon 1995); *see also Smith v. Sewell*, 858 S.W.2d 350 (Tex.1993) (determining that an individual could bring an action against a tavern owner for injuries resulting from the individual voluntarily becoming intoxicated when the tavern provided, sold or served alcohol to the individual); *but see Graff v. Beard*, 858 S.W.2d 918 (Tex.1993) (holding that a social host does not have a common-law duty to avoid making alcoholic beverages available to adult guests who will be driving). A provider of alcoholic beverages is only liable if 1) the alcoholic beverages were provided when the patron "was obviously intoxicated to the extent that he presented a clear danger to himself and others," TEX. ALCO.BEV.CODE ANN. § 2.02(b)(1) (Vernon 1995); *Graff*, 858 S.W.2d at 919–20, and 2) "the intoxication of the recipient of the alcoholic beverage was a proximate cause of damages suffered." TEX.ALCO.BEV.CODE ANN. § 2.02(b)(2) (Vernon 1995). The Texas Comparative Responsibility Act[2] applies to a dram shop action. *Sewell*, 858 S.W.2d at 356. Therefore, "an intoxicated person[3] suing a provider of alcoholic beverages for his own injuries under Chapter 2 [of the alcoholic beverage code] will be entitled to recover damages only if his percentage of responsibility is found to be less than or equal to fifty percent." *Sewell*, 858 S.W.2d at 356.

O'Brien testified that on October 27, 1990, she went out with some friends to celebrate a birthday.[4] She consumed about a half of a

---

1. TEX.ALCO.BEV.CODE ANN. § 2.01 *et. seq.* (Vernon 1995).

2. TEX.CIV.PRAC. & REM.CODE ANN. § 33.001, *et. seq.* (Vernon Supp.1995).

3. Certainly, the Supreme Court meant that the person was intoxicated when injured, not that the person was intoxicated when the suit was brought.

4. The facts of this case are primarily based on O'Brien's testimony. Venetoulias did not at-

beer while at a pool hall. She and another couple left the birthday party and met at Hullabaloo, a Pasadena country and western nightclub. Because the other couple was arguing, O'Brien stood by herself and "people watched." Venetoulias, the president and owner of Hellenic, the parent company of Hullabaloo, approached O'Brien and twice asked her to dance, but she refused. He then asked her to join him and some friends at the bar. She accepted. Venetoulias offered her a drink, but she declined explaining that she was alone and driving. After he assured her that he, a friend or a cab would take her home, she accepted his offer for a drink. She gave Venetoulias her keys, license and money "because he asked for them" and because he was going to "make sure" that she did not attempt to drive home.

Over the next four hours, O'Brien drank approximately fifteen drinks which was "six to eight times" more alcohol than she had consumed on any previous occasion. She admitted that she was an experienced drinker; she had been drunk before and had experienced the feelings associated with being drunk. At approximately midnight, two hours after O'Brien joined Venetoulias, she encountered an off-duty police officer with whom she was familiar. The officer testified it was obvious O'Brien had been drinking and she was probably legally intoxicated. He also testified that he knew Venetoulias and had seen O'Brien with Venetoulias on the night in question. After this five minute discussion with the officer, O'Brien returned to the group at the bar. The Hullabaloo bartenders continued to serve her drinks until the club closed at 2:00 a.m. O'Brien testified that while she was in the club she primarily remained at the bar with Venetoulias and his group of friends. She also testified that one bartender "seemed to [serve her] more than the others." She was served and she consumed alcohol until the club closed. Because of her intoxication, as O'Brien left the club, Venetoulias had to "support" her by putting his arm around her. She and Venetoulias went to his car. While in the car, he placed his hand on her knee and asked her to

go to a party with him, but she refused. He then took her to her car, put her inside, put her keys in the ignition, returned her money and driver's license, and left in his car. Her car was parked in the lighted parking lot of the club which was adjacent to a grocery store that was open all night. While O'Brien was unable to recall what transpired after Venetoulias left, she apparently attempted to drive home and was involved in a one car accident which resulted in injuries.

■ Initially, appellants argue that O'Brien was more than fifty percent responsible for her injuries. They contend that her "extraordinary, egregious degree of personal irresponsibility" and the "sheer quantity of alcohol" that she consumed "necessarily" rendered her degree of fault greater than fifty percent. In addition, appellants claim that because she was not in any danger sitting in her car in the club parking lot, O'Brien should have waited in her car until she was sober or she should have called a cab or a friend from the grocery store. Appellants claim that her failure to pursue these alternatives was negligent and further demonstrated that she was more than fifty percent responsible for her injuries.

■ We have reviewed the record and are not convinced that the trial court's determination of responsibility is against the great weight and preponderance of the evidence. Nothing in the record convinces us that O'Brien was more responsible than Venetoulias and Hellenic combined. She acted reasonably by not accepting Venetoulias' offers until he assured her that she would be safely transported home. This Court is not a fact finder, and we cannot substitute our judgment for that of the trial court, even if a different answer could be reached on the evidence. *St. Paul Medical Ctr. v. Cecil,* 842 S.W.2d 808, 812 (Tex.App.—Dallas 1992, no writ).

■ Next, appellants contend that the record does not sufficiently demonstrate that Hullabaloo personnel served O'Brien when

tempt to controvert her testimony. He claimed to be in College Station watching his son play football, and not at Hullabaloo. The trial court's

findings indicate that it believed O'Brien's testimony.

she was "obviously intoxicated" as required for liability under the Dram Shop Act. At approximately midnight, an off-duty police officer talked with O'Brien. He testified that she was probably legally drunk. After this conversation, the Hullabaloo bartenders served O'Brien for two more hours. The police officer's conversation lasted only approximately five minutes while the bartenders were able to observe her over approximately four hours. O'Brien's testimony that one bartender served her more than the others was uncontradicted. Without any controverting evidence, based on this testimony, we cannot say that the trial court's finding was against the great weight and preponderance of the evidence.

■ Appellants also contend that the evidence was not sufficient to show that Hellenic's conduct was a proximate cause of O'Brien's injuries. Appellants argue that her decision to start her car and attempt to drive home was an intervening cause that was not reasonably foreseeable. Proximate cause has been described as follows:

> The two elements of proximate cause are cause in fact and foreseeability. Cause in fact means that the act or omission was a substantial factor in bringing about the injury and without it, the harm would not have occurred.... Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. Foreseeability does not require the actor to anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence.

*Berly v. D & L Sec. Servs. and Investigations, Inc.,* 876 S.W.2d 179, 182–83 (Tex. App.—Dallas 1994, writ denied) (citations omitted).

■ While her driving while intoxicated might have been a criminal act, it is not an intervening cause. An actor's negligence is not excused when the criminal conduct is the foreseeable result of the actor's negligence. *Id.* at 183. The Hullabaloo bartenders served O'Brien excessive amounts of alcohol which led to her injuring herself. In addition, her driving after consuming the large amounts of alcohol was foreseeable especially since Venetoulias, the president of Hellenic, placed her into her vehicle and put her keys in the ignition when she was obviously intoxicated. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987) ("The risk and likelihood of injury from serving alcohol to an intoxicated person whom the licensee knows will probably drive a car is as readily foreseen as injury resulting from setting loose a live rattlesnake in a shopping mall"). By determining that each party was equally negligent, the trial court implicitly found that Hellenic's conduct was a proximate cause of O'Brien's injuries. The determination of proximate cause and intervening cause is a question for the finder of fact. *Id.* In making its findings, the trial court weighs the evidence, assesses the credibility of witnesses, and resolves any conflicts and inconsistencies. *St. Paul Medical,* 842 S.W.2d at 812.

In summary, we have reviewed the evidence and hold that the trial court's findings are not against the great weight and preponderance of the evidence. Appellants' first, second and third points of error are overruled.

In their fourth point of error, appellants argue that Venetoulias did not breach a legal duty owed to O'Brien. They admit, however, that the trial court reasonably could have found that Venetoulias voluntarily undertook a duty to drive O'Brien home if she became intoxicated. They assert that this duty was voluntarily abandoned when O'Brien declined Venetoulias' invitation to go to a party.

■ The common law doctrine of negligence consists of three elements: a legal duty owed by one person to another, a breach of that duty, and damages proximately resulting from the breach. *El Chico,* 732 S.W.2d at 311; *Riley v. Triplex Communications, Inc.,* 874 S.W.2d 333, 350 (Tex.App.— Beaumont 1994, no writ). The threshold inquiry in a negligence action is determining whether the defendant owed a duty to the plaintiff. *Hartsfield v. McRee Ford, Inc.,* 893 S.W.2d 148, 150 (Tex.App.—Houston [1st Dist.] 1995, writ denied). In determining whether to impose a duty we are to consider

the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the actor. *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983). Foreseeability is generally regarded as the most important of these factors. *Hartsfield*, 893 S.W.2d at 150; *see also Otis Eng'g*, 668 S.W.2d at 309. A person is generally under no duty to come to the aid of a person in distress. He is, however, under a duty to avoid an affirmative act which might worsen the situation. *Otis Eng'g*, 668 S.W.2d at 309.

'If a party negligently creates a situation, then it becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby.'

*El Chico*, 732 S.W.2d at 311 (quoting *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 110 (1942)).

O'Brien refrained from drinking alcohol until she was assured that she would get home safely. Based on Venetoulias' promises, she began to consume alcohol. That she would attempt to drive home and that injuries would result was foreseeable because her judgment was impaired, her perceptions were distorted and her ability to react was slowed. *See El Chico*, 732 S.W.2d at 311. On the other hand, allowing Venetoulias to make the promise to arrange safe transportation without a corresponding duty to perform as he promised, serves no social utility and places only a slight burden on him. He negligently created the situation and failed to act reasonably by leaving O'Brien in her car with the keys in the ignition. *See id; Otis Eng'g*, 668 S.W.2d at 309. Accordingly, we find that Venetoulias owed O'Brien a duty and overrule appellants' fourth point of error.

Next appellants argue the evidence was legally or factually insufficient to demonstrate that his conduct was a proximate cause of her injuries. Appellants grouped their final three points of error. The argument portion of their brief only discusses whether Venetoulias owed a duty to O'Brien. Appellants do not explain or discuss how the evidence was either legally or factually insufficient. They also do not cite any authority in support of these points of error. Because these contentions are not supported by argument or authority, appellants have failed to present anything for this court to review. TEX.R.APP.P. 74; *Emery v. Rollins*, 880 S.W.2d 237, 238 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Ford v. State*, 870 S.W.2d 155, 157 (Tex.App.—San Antonio 1993, pet. ref'd).

Furthermore, as discussed in conjunction with the first three points of error, the two elements of proximate cause are cause in fact and foreseeability. *Berly*, 876 S.W.2d at 182–83. Based on Venetoulias' promise, O'Brien began drinking. When she thwarted his advances, he placed her in her automobile and her keys in the ignition even though she was extremely intoxicated. Her driving and injuring herself was foreseeable and Venetoulias' conduct was also a proximate cause of her injuries. Accordingly, appellants' fifth and sixth points of error are overruled and the judgment of the trial court is affirmed.

EDELMAN, Justice, concurring.

I agree that the majority opinion is a correct disposition of the case under prevailing law. However, I believe that this case illustrates an inequity in our law of comparative responsibility in that a defendant suffers a greater consequence for gross negligence than ordinary negligence, but a plaintiff does not. Where *both* the defendant and plaintiff are grossly negligent in causing the plaintiff's injury, an award of punitive damages punishes the gross negligence of the defendant while, in effect, rewarding that of the plaintiff. This might be remedied by allowing evidence of gross negligence by a plaintiff to be formally considered in both awarding and reviewing awards of punitive damages.