Marta REYES, Plaintiff,

v.

DOLLAR TREE STORES, INC., and
Veronica Macias, Defendants.

EP–15–CV–00159–KC

United States District Court,
W.D. Texas, El Paso Division.

Signed October 19, 2016

J. Roberto Oaxaca, Scherr & Legate, PLLC, James F. Scherr, El Paso, TX, for Plaintiff.

C. Robert Dorsett, Jr., Ross Sterling Crossland, Dorsett Johnson & Swift, LLP, Austin, TX, Ramon Benavides, III, Mounce Green Myers Safi Paxson & Galatzan, P.C., El Paso, TX, for Defendant.

## ORDER

KATHLEEN CARDONE, UNITED STATES DISTRICT JUDGE

On this day, the Court considered Defendant Dollar Tree Stores, Inc. ("Defendant" or "Dollar Tree"), and Veronica Macias's ("Macias")[1] Amended Motion for Summary Judgment ("Motion for Summary Judgment"), ECF No. 40, and Defendant and Macias's Request for Oral Hearing on the Amended Motion for Summary Judgment ("Motion for Hearing"), ECF No. 56, in the above-captioned case. For the following reasons, Defendant's Motion for Summary Judgment is

1. In the Notice of Removal ("Notice of Removal"), ECF No. 1, Defendant Dollar Tree asserted that Macias was improperly joined. Because the Plaintiff did not file a Motion to Remand, this assertion went unchallenged. Upon review of the case at the time of filing, however, the Court found that Macias was indeed improperly joined and that the Court had subject matter jurisdiction over this case. Therefore, although both Defendant Dollar Tree and Macias filed the Motion for Summary Judgment, the Court only addresses the Motion as to the claims against Defendant Dollar Tree. To aid in consistency, all quotations from the record referring to "Defendants" have been altered to refer to "Defendant." Furthermore, Defendant Dollar Tree Stores asserted in its Notice of Additional Counsel ("Notice of Additional Counsel"), ECF No. 58, that "Veronica Macias has been non-suited by agreement." *See* Notice Add'l Counsel 1. Although the Notice was not signed by Plaintiff's counsel and the record contains no verification of the non-suit, Plaintiff has not objected to it. *See id.* This Notice indicates that the Court need not address the Motion for Summary Judgment as to claims against Macias, which also supports the Court's decision to consider the Motion for Summary Judgment only as to Defendant Dollar Tree.

GRANTED in part and DENIED in part. Further, Defendant's Motion for Hearing is DENIED as moot.

## I. BACKGROUND

### A. Factual Background

On April 2, 2014, Plaintiff was standing in line to pay for merchandise at Defendant's store located at 116 South Stanton, El Paso, Texas 79901 (the "Store"), when a shoplifter attempting to flee the premises pushed Plaintiff and knocked her to the ground (the "Incident"). Mot. Summ. J. Ex. D, at 1, ECF No. 40–4 ("Defendant's Proposed Undisputed Facts"); Resp. to Def.'s Facts and Additional Proposed Undisputed Facts, at 1, ECF No. 41–1 ("Plaintiff's Proposed Undisputed Facts"). Veronica Macias and Rodolfo Saucedo, both employees of Defendant, were working and present at the Store at the time. See Mot. Summ. J. Ex. C, ECF No. 38–3, 9:10–19 ("Saucedo Deposition—Defendant's Excerpt"); Resp. Ex. 4, ECF No. 41–2, 9:10–19 ("Saucedo Deposition—Plaintiff's Excerpt"). At the time of the Incident, Macias was working as the manager of the Store, and Saucedo was on duty as a "loss prevention officer." Mot. Summ. J. Ex. B, at 2, ECF No. 38–2 ("Police Report").[2] Such is the extent of Defendant's facts.

Plaintiff submits evidence supporting a richer recounting of the events. According to Saucedo's testimony, he underwent "basic training[ ]" before starting as a loss prevention or security officer at the Store but was not trained specifically how to handle shoplifters and shoplifting incidents. Saucedo Dep.—Pl.'s Excerpt 6:13–22. He did testify that he was allowed to "physically subdue or grab or hold a shoplifter" if the shoplifter "was trying to get away." Id. at 7:2, 14–21. Referring to Dollar Tree's policy on suspected shoplifters, Saucedo stated, "once they pass the register, if the guy is trying to leave, then you can stop the person." Id. at 7:19–21. He continued that he would stop a suspected shoplifter regardless of the estimated value of the merchandise that he suspected was being stolen. Id. at 8:3–6.

Plaintiff offers evidence that Saucedo felt part of his job was to chase and grab shoplifters, that he knew that some shoplifters would run, and that, if they ran, he believed his duty was to pursue and detain them. See id. at 34:45–36. Saucedo also testified that it was his job to prevent suspected shoplifters from bolting because, if they ran, they might endanger other people in the Store. See id. He mentioned that he had, on at least one prior occasion, grabbed a suspected shoplifter as he or she attempted to run. Id.

Saucedo's testimony about Store policy differs from that offered by Macias, the Store manager. See Resp. 10–14. According to Macias, the Store's loss prevention policy is for a Store employee first to greet a customer to acknowledge him or her, and then, as the customer leaves the Store, to check his or her bags and receipts. Macias Dep. 11:7–16. She also testified that if a customer was suspected of shoplifting an amount less than $25.00, he or she would be asked to leave the Store. Id. at 12:22–5–13:1–2. The police would not be called. Id. at 11:18. Macias also stated that shoplifting in the Store was not uncommon: during the six to seven years Macias worked at the Store, more than twenty shoplifting incidents had occurred. Id. at 10:9–18.

On the day of the Incident, the shoplifter, Timothy Compton, attempted to steal

---

2. The Court notes that the Police Report is appended in its entirety as an exhibit both to Defendant's Motion and to Plaintiff's Response. Resp. Ex. 5 at 56, ECF No. 41–2. The exhibits are identical, and, in the interest of simplicity, the Court cites only to the exhibit attached to the Motion.

two bags of Reese's Pieces candy from the Store. *See* Police Report 1; Saucedo Dep.—Def.'s Excerpt 12:18–22. Although Defendant and Plaintiff agree that Compton was fleeing the Store after being caught shoplifting, Plaintiff points out that the summary judgment evidence includes conflicting versions of the events that precipitated Compton's flight. *See* Def.'s Facts 1; Pl.'s Facts 2.

According to Defendant's evidence, there are two versions of what transpired prior to Compton's attempted flight. The Police Report states that Saucedo told the police officer at the scene that he apprehended Compton at the exit of the Store and then walked with him to the back of the Store to get his information before Compton fled. *See* Police Report 2. Saucedo states in his deposition that he did not stop or question Compton before he fled. Saucedo Dep.—Def.'s Excerpt 11:21–12:3, 46:6–25–47:1–22. Saucedo testified that, on the day of the Incident, a customer approached him to tell him that someone was stealing in the back of the Store—the "food area." *See id.* at 11:13. The customer provided Saucedo with a description of the shoplifter. *Id.* at 11:15–16. Subsequently, Saucedo "found the guy" and "was just keeping an eye on him" while Compton continued shoplifting in the food aisle. *Id.* at 11:15–20. According to Saucedo, he followed Compton toward the front to speak with him, and Compton started running when he reached a register near the front of the Store. *Id.* at 11:25–7, 12:2. Saucedo explains that he started running after Compton, and that soon after, Compton knocked Plaintiff to the ground. *Id.* at 12:3. Saucedo stated that, after Compton knocked Plaintiff over, Saucedo "tried to grab [Compton]" because Saucedo knew that Compton "was going to run away from the incident." Saucedo Dep.—Pl.'s Excerpt 14:24–15:1.

### B. Procedural Background

Plaintiff filed her Petition in the 327th District Court of El Paso County, Texas, on April 17, 2015. *See* Notice of Removal Ex. A, at 2 ("Plaintiff's Original Petition"). Defendant removed the case to federal court on May 29, 2015. *See* Notice of Removal. On May 25, 2016, Defendant filed its Motion for Summary Judgment, *see* Mot. Summ. J., and on June 13, 2016, Plaintiff filed her Response, *see* Resp., ECF No. 41. Defendant did not file a Reply in support of its Motion for Summary Judgment.

## II. DISCUSSION

### A. Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials[ ]" or show "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute, or that [the movant] cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c).

The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (internal citations omitted). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478–79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### B. Analysis

In her Petition, Plaintiff brings a negligence claim and a premises liability claim against both Defendant and Macias. Pet. 3–4. In the Motion, Defendant first argues that Plaintiff's negligence claim fails because, under the circumstances, negligence does not provide a viable theory under which Plaintiff can recover. *See* Mot. Summ. J. 3–4. Alternatively, Defendant argues, if negligence does provide a viable theory of recovery, Plaintiff's negligence claim fails as a matter of law because Plaintiff "cannot meet all elements" of negligence. *See id.* at 5. Finally, Defendant argues that Plaintiff's premises liability claim fails because Defendant did not have actual or constructive notice of an unreasonably dangerous condition on the premises. *See id.* at 5–6. The Court addresses these arguments in turn.

### 1. Negligence claim and premises liability claim may be brought simultaneously

At the outset, Defendant contends that a premises liability claim the "only viable cause of action" under these facts. Mot. Summ. J. 3. It continues that Plaintiff is "merely tr[ying] to disguise her premises liability claim in the form of a negligence cause of action," *id.* at 4, and that the negligence claim must fail as a matter of law, *id.* at 3 (citing *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992)). Defendant further argues that "Plaintiff clearly has not alleged injury as a result of a negligent activity on the part of Defendant, nor is there evidence sufficient to maintain such an allegation," because Plaintiff's negligence claim "is based upon the shoplifter being considered a condition of the premises." Mot. Summ. J. at 3–4.

In her Response, Plaintiff argues that "Defendant mischaracterize[s] Plaintiff's pleaded causes of action" and that she, in fact, "properly pleaded both negligence and premises liability against Defendant." Resp. 4. She asserts that she was injured "both as a result of Defendant Dollar Tree's poorly designed store (condition on the premises) and as a result of Defendant's negligence in pursuit of a shoplifter

on [its] premises (negligent activity that occurred contemporaneously with the injuries)." Resp. 7.

■ Texas recognizes "two types of negligence in failing to keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect." *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997) (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985)); *Garcia v. Ross Stores, Inc.*, 896 F.Supp.2d 575, 579 (S.D. Tex. 2012).[3] "Negligent activity and premises liability are both within the scope of negligence, but 'negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe.' " *Mangham v. YMCA of Austin, Texas–Hays Cmtys.*, 408 S.W.3d 923, 929 (Tex. App. 2013) (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)); *Garcia*, 896 F.Supp.2d at 579 (quoting *Del Lago*, 307 S.W.3d at 776). Therefore, an ordinary negligence case—that is, one arising from negligent activity—is not turned into a premises liability case simply because it occurs on the defendant's premises. *Sibai v. Wal–Mart Stores, Inc.*, 986 S.W.2d 702, 706 (Tex. App. 1999) ("It is beyond question that a proprietor is not relieved of its active negligence merely because the injury occurs on its premises."). A litigant may plead causes of action for both negligent activity and premises liability regarding a single incident. *E.g. Taylor v. Louis*, 349 S.W.3d 729, 738 (Tex. App. 2011); *Mangham*, 408 S.W.3d at 929; *see also W. Invest., Inc. v. Urena*, 162

S.W.3d 547, 550 (Tex. 2005) (addressing negligence and premises liability claims simultaneously).

■ However, "[r]ecovery on a negligent activity theory requires that the plaintiff be injured by or as a contemporaneous result of the activity itself," rather than by a condition created by the activity. *Arsement v. Spinnaker Expl. Co.*, 400 F.3d 238, 251 (5th Cir. 2005) (quoting *Villegas v. Texas Dep't of Transp.*, 120 S.W.3d 26, 38 (Tex. App. 2003)); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *Mangham*, 408 S.W.3d at 929; *Garcia*, 896 F.Supp.2d at 579. Therefore, a failure to act with regard to physically unsafe property does not support a negligent activity claim. *Oncor Elec. Delivery Co., LLC v. Murillo*, 449 S.W.3d 583, 608 (Tex. App. 2014); *see also Henderson v. Wal–Mart Stores, Inc.*, No. 1:14-CV-224, 2015 WL 3901755, at *1 (E.D. Tex. June 23, 2015) (citing *Oncor*, 449 S.W.3d at 591–92) (finding that a failure to fix or clean up a physical condition is not enough to support a negligent activity claim).

As the Court explains below, Plaintiff has provided some evidence that violation of Store policy arising from, and in combination with, a lack of training on the policy could have made injury by a shoplifter reasonably foreseeable. Because Plaintiff alleges negligent, affirmative activity, and because negligent activity may be analyzed in tandem with premises liability, Defendant's argument that Plaintiff is restricted to pleading a premises liability claim fails. *See Sibai*, 986 S.W.2d at 706; *Taylor*, 349 S.W.3d at 737. Therefore, the Court now turns to Plaintiff's negligence cause of action.

---

**3.** When jurisdiction is based on diversity, the substantive law of the forum state applies. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Therefore, because the Court's subject matter in this case is based on diversity jurisdiction, the Court applies Texas substantive law. *See id.*

## 2. Genuine issues of material fact exist as to negligence claim

■ Defendant next argues that Plaintiff's negligence claim fails as a matter of law because Plaintiff "cannot meet all elements" of negligence. *See* Mot. Summ. J. 5. Under Texas common law, "a negligence cause of action consists of: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996); *Urena*, 162 S.W.3d at 550; *Kelly v. Brown*, 260 S.W.3d 212, 218 (Tex. App. 2008).

Defendant's argument regarding the elements of negligence in this case is scant, failing to cite either to legal authority or to the record. *See* Mot. Summ. J. 4–5. Its argument as to the elements of negligence states in full:

> In this case, Plaintiff is unable to show that Defendant breached any duty to Plaintiff in that Defendant failed to exercise reasonable care to reduce or eliminate a risk of harm. Defendant did not fail to exercise reasonable care to reduce or eliminate the risk of harm because they could [*sic*] anticipate that a shoplifter would knock a customer to the ground as he attempted to run out of the store. Thus, there was no duty for Defendant to warn about or eliminate any risk of harm that they did not know existed. For this reason, Plaintiff's negligence cause of action cannot meet all elements and fails as a matter of law.

*Id.*

Defendant's argument, then, appears to be that it did not owe a duty to Plaintiff under the facts. *See id.* The Court addresses the element of duty, along with the other elements of a negligence claim, below.

### a. Duty

Defendant asserts that "there was no duty for Defendant to warn about or eliminate any risk of harm that [it] did not know existed." Mot. Summ. J. 5. Plaintiff argues that "the summary judgment evidence establishes that ... there remain genuine issues of material fact as to Defendant's":

1) "failure to establish policies, safety procedures, and regulations;"

2) "failure to train their staff to adequately handle shoplifters;"

3) "failure to safely secure Timothy Compton so as to avoid [Plaintiff's] injuries;" and

4) "Defendant's overall breach of [its] duty of reasonable care in their handling of the shoplifting incident."

Resp. 8

Plaintiff further argues that "[t]he summary judgment evidence ... establishes that this shoplifting incident was foreseeable based on other incidents that had occurred at this particular Dollar Tree location, and thus Defendant knew of this and failed to prevent an entirely foreseeable incident that caused Plaintiff damages." *Id.* at 8–9.

■■ "A prerequisite to tort liability is the existence of a legally cognizable duty." *Firestone Steel*, 927 S.W.2d at 613; *Reeder v. Daniel*, 61 S.W.3d 359, 364 (Tex. 2001) ("It is fundamental, however, that a legal duty must exist before a defendant is held liable for negligence."). "Under Texas law, the dominant consideration in determining whether a duty exists is foreseeability of risk." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540–41 (5th Cir. 2005).

■ "[T]he existence of a legal duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Military Highway Water Supply Corp. v. Morin*, 156 S.W.3d 569, 572 (Tex. 2005) (internal citations and quotation marks omitted); *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523,

525 (Tex. 1990); *Walters v. Ramada Franchise Sys., Inc.*, No. 05-97-02162-CV, 2000 WL 1201688, at *2 (Tex. App. Aug. 24, 2000). However, "[w]hile foreseeability as an element of duty may frequently be determined as a matter of law, in some instances it involves the resolution of disputed facts or inferences which are inappropriate for legal resolution." *Kendrick v. Allright Parking*, 846 S.W.2d 453, 458 (Tex. App. 1992) (citing *Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d 659, 662 (Tex. 1990)). "[I]f the essential facts about foreseeability as an element of . . . duty are disputed, the question is a fact issue for the jury. Evidence is disputed when it does not conclusively establish the pertinent facts or the reasonable inferences to be drawn from those facts." *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162 (Tex. 2002) (internal citation and quotation marks omitted); *see also Walters*, 2000 WL 1201688, at *2 (citing *Barnes v. Wendy's Intern., Inc.*, 857 S.W.2d 728, 729 (Tex. App. 1993)) (noting that the determination of disputed facts "usually" cannot be determined by the court in a motion for summary judgment). When essential evidence is disputed, the question of foreseeability is "properly submitted to the trier of fact." *Kendrick*, 846 S.W.2d at 458 (citing *Mitchell*, 786 S.W.2d at 662; *Bennett v. Span Industries, Inc.*, 628 S.W.2d 470, 474 (Tex. App 1981)).

 Generally, "a landowner or one who is otherwise in control of the premises must use reasonable care to make the premises safe for the use of business invitees." *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997) (citing *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425, 431 (1950)). Reasonable care contemplates only those risks that are foreseeable—those dangers that a "person of ordinary intelligence . . . should have anticipated" in light of his negligent action. *Berly v. D & L Sec. Servs. & Investig'ns, Inc.*, 876 S.W.2d 179, 182–3 (Tex. App. 1994); *Palacio v. AON Props., Inc.*, 110 S.W.3d 493, 498 (Tex. App. 2003). However, foreseeability "does not require the actor to anticipate the precise manner in which an injury will occur." *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). Ordinarily, the duty of reasonable care "does not include the obligation to prevent criminal acts of third parties who are not subject to the premises occupier's control." *Id.* This is because "[u]sually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability." *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 550 (Tex. 1985).

 However, "[o]ne who controls the premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *Lefmark*, 946 S.W.2d at 53 (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)); *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999) ("[P]roperty owners owe a duty to those who may be harmed by the criminal acts only when the risk of criminal conduct is so great that it is both unreasonable and foreseeable."); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993); *Nixon*, 690 S.W.2d at 550. The duty to take precautions against foreseeable third-party misconduct stems from the rationale that "the party with the power of control or expulsion is in the best position to protect against the harm." *Tidwell*, 867 S.W.2d at 21 (quoting *Morris v. Barnette*, 553 S.W.2d 648, 649–50 (Tex.Civ. App. 1977)).

 Moreover, the Supreme Court of Texas has explained that "criminal misconduct is sometimes foreseeable because of immediately preceding conduct." *See Del Lago*, 307 S.W.3d at 769. Therefore, "[i]f the likelihood that a third person may act in a particular manner is the hazard or

one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." *Lane v. Halliburton*, 529 F.3d 548, 566 (5th Cir. 2008) (quoting Restatement (Second) Torts § 449) (citing *Nixon*, 690 S.W.2d at 549; *Kimbriel Produce Co. v. Mayo*, 180 S.W.2d 504, 507 (Tex.Civ.App. 1944)); *Morin v. Moore*, 309 F.3d 316, 327 (5th Cir. 2002) ("[W]hen the third party's criminal conduct is a foreseeable result of the prior negligence, the criminal act does not excuse the previous tortfeasor's liability." (citing *Cowart v. Kmart Corp.*, 20 S.W.3d 779, 783 (Tex. App. 2000))).[4] In other words, a landowner's "sufficient knowledge of the immediate circumstances" can be enough to render a third party's misconduct foreseeable. *Del Lago*, 307 S.W.3d at 769 (quoting Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 19 cmt. f (2010)) (emphasis in original). If a landowner "reasonably anticipate[s] ... criminal conduct on the part of third persons, either generally *or at some particular time,* he may be under a duty to take precautions against it." *Id.* (emphasis in original) (citations omitted).

 Under Texas law, landowners' duties to invitees are governed not only by negligent activity and premises liability principles, but also by a more particularized body of law primarily arising in the retail sphere: the shopkeeper's privilege.[5] *Wal–Mart Stores, Inc. v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998). When retail store personnel reasonably believe that a customer "has stolen or is attempting to steal property," they are "privileged to detain that person in a reasonable manner and for a reasonable time to investigate ownership of the property." Tex. Civ. Prac. & Rem. Code Ann. § 124.001; *Resendez*, 962 S.W.2d at 540 (Tex. 1998); *see also Dillard Dept. Stores, Inc. v. Silva*, 148 S.W.3d 370 (Tex. 2004) (affirming a jury's finding that the method of detention had been unreasonable, thus vitiating the shopkeeper's privilege). Texas courts that have considered the shopkeeper's privilege focus primarily on whether the employee's suspicions of the customer, the manner of detainment, and the time of detainment each were reasonable. *E.g., Silva*, 148 S.W.3d at 373. "Reasonableness is examined based on the employee's actions under the circumstances." *Oramulu v. Wash. Mut. Bank*, 699 F.Supp.2d 898, 912 (S.D. Tex. 2009) (internal citations omitted). The fact-specific determination of reasonableness, then, is usually a question for the jury. *Id.*; *Berly*, 876 S.W.2d at 183.

Though courts have chiefly evaluated the reasonableness of the shopkeeper's actions vis-à-vis the suspected shoplifter, *e.g. Wal–Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 520 (Tex. App. 1996); *Oramulu*, 699 F.Supp.2d at 912 (S.D. Tex. 2009), one court has also linked the statutory privilege provided in section 124.001 of the Texas Civil Practices and Remedies Code to the Texas public policy "according citizens the right to take action in defense of their property," *Helms v. Harris*, 281

**4.** The Court notes that though the *Cowart* court's analysis centers on proximate cause, *see* 20 S.W.3d at 783, its analysis is equally applicable to duty, *Holder*, 5 S.W.3d at 659 ("The 'foreseeability' analysis is the same for both duty and proximate cause.").

**5.** Although section 124.001 of the Texas Code of Civil Practice and Remedies is commonly referred to as the "shopkeeper's privilege," the statutory provision does not limit the privilege to detain to employees, managers, and owners of retail stores. Tex. Civ. Prac. & Rem. Code § 124.001 (specifying that "a person" who reasonably believes another is stealing may reasonably detain to determine ownership); 7 Tex. Jur. Pl & Pr. Forms § 116:7 ("Under Texas law, store owners enjoy a statutory 'shopkeeper's privilege.' ").

S.W.2d 770, 771–72 (Tex. App. 1955); *see also Berly*, 876 S.W.2d at 183 (linking Texas public policy to statutory provision section 124.001). Common between the broader public policy encouraging defense of property and the narrower statute privileging its defense, the *Berly* court noted, the person defending his or her property may only act if his or her actions do not "create an unreasonable risk of causing harm to innocent third parties." *Berly*, 876 S.W.2d at 189. When, then, the person should have realized that the nature of his or her actions created an unreasonable risk, the third party, if injured, "may subject the actor to liability." *Helms*, 281 S.W.2d at 772 (citing RESTATEMENT TORTS § 75 (AM. LAW INST. 1934)).

Even when not directly addressing shopkeeper's privilege, and applying general negligence principles, Texas courts have found that stores and their agents must handle shoplifting incidents in a reasonable manner. *See generally McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980); *Berly*, 876 S.W.2d at 183; *Guerra*, 2013 WL 4531643; *Nguyen v. Sephora USA*, No. 14-13-01017-CV, 2014 WL 4202538, at *3 (Tex. App. Aug. 26, 2014); *Wal–Mart Stores, Inc. v. Munoz*, No. 13-98-087-CV, 1999 WL 34973477, at *1 (Tex. App. May 13, 1999). The Court has identified five opinions from Texas courts that examine negligence claims arising from third-party injuries caused directly or indirectly by a fleeing shoplifter. To determine whether an injury was foreseeable, courts have considered several interrelated factors, including (1) whether the store complied with established policy during the shoplifting incident; and (2) whether employees had been trained on the policy. *McClure*, 608 S.W.2d at 904 (considering compliance with store procedures and failure to train on store policy); *Berly*, 876 S.W.2d at 186–87, 189 (considering compliance with store and security policy and failure to train security on policy); *Ngu-*

*yen*, 2014 WL 4202538, at *2–3 (considering compliance with store policy); *Munoz*, 1999 WL 34973477, at *2–3 (considering compliance with store policy and training); *Guerra v. United Supermarkets, L.L.C.*, No. 07-12-00164-CV, 2013 WL 4531643, at *6 (Tex. App. Aug. 23, 2013) (finding a fact issue as to foreseeability with little discussion). Courts consider these factors together. *See Berly*, 876 S.W.2d at 186–87, 188.

In the instant case, the Court finds that there are genuine disputes of material fact as to whether the risk posed by Compton's apprehension and flight was foreseeable to Defendant. At the outset, the Court notes that Defendant does not contest its control of the premises or contest Plaintiff's status as a business invitee. *See generally* Mot. Summ. J. Indeed, Defendant appears to accept that it owed Plaintiff the general duty to business invitees: it frames its potential responsibility, had Compton's actions been foreseeable, as a "duty for Defendant to warn about or eliminate any risk of harm"—the business invitee standard of care. *Id.* at 5; *Del Lago*, 307 S.W.3d at 771. Therefore, Defendant owed Plaintiff a duty "to use reasonable care to make the premises safe for the use of business invitees." *See Lefmark*, 946 S.W.2d at 53.

However, the duty of care is triggered in this case only if Defendant knew or had reason to know of an unreasonable and foreseeable risk of harm to the invitee. *See id.* In determining duty here, then, the central issue is whether the circumstances surrounding Compton's running into and knocking over Plaintiff presented an unreasonable, foreseeable risk. The parties appear to dispute several facts that are material in resolving the matter of foreseeability.

Defendant contends that it had no duty to Plaintiff because it "could [not] anticipate that a shoplifter would knock a cus-

tomer to the ground" as he attempted to flee and thus could not warn Plaintiff of or eliminate this unknown risk. Mot. Sum. J. 4–5. Defendant does not, however, offer case law supporting its argument that a shopkeeper has no duty to customers in similar circumstances. *See generally id.* Furthermore, the Court disagrees with Defendant's framing of the issue of foreseeability: Defendant impermissibly narrows the foreseeable harm shoplifters might pose to customers to the "precise manner" of the harm inflicted here, which was the shoplifter knocking a customer down in an attempt to flee. *See Travis,* 830 S.W.2d at 98; Mot. Sum. J. 4–5. As explained above, there is indeed legal support for a store's duty to protect customers and bystanders from the range of harms that shoplifters can inflict. *E.g. McClure,* 608 S.W.2d at 904; *Berly,* 876 S.W.2d at 188. The evidence of frequent criminal shoplifting at the Store could have alerted the Store to the foreseeable risks shoplifters pose. *See Berly,* 876 S.W.2d at 188–89. And, given the frequency of shoplifting in the Store, it is foreseeable that harm to customers could result if there is evidence that (1) the Store violated its established policy; and (2) the Store failed to train its employees properly on the handling of shoplifters. *E.g. McClure,* 608 S.W.2d at 904; *Berly,* 876 S.W.2d at 186–87, 189; *Nguyen,* 2014 WL 4202538, at \*2–3; *Munoz,* 1999 WL 34973477, at \*2–3; *Guerra,* 2013 WL 4531643, at \*6. The Court now addresses these disputed, intertwined "essential facts about foreseeability." *Kendrick,* 846 S.W.2d at 458.

The parties' evidence presents a dispute as to whether Defendant followed its policy regarding shoplifters during the Incident. Indeed, a dispute exists as to what exactly that policy contains. Though Defendant does not mention Store policy in the body of its Motion for Summary Judgment, it does incorporate several pages of Saucedo's deposition by reference, in which he testifies about policy. Mot. Summ. J. 2. Plaintiff provides the remainder of that testimony in her Response. *See generally* Saucedo Dep.—Pl.'s Excerpt. In his deposition, Saucedo detailed a set of practices—rather than a single policy—regarding shoplifters. *See generally id.* He testified that if he "had a visual" on a shoplifter, he had "the right" to ask what he or she was carrying and then to inform the shoplifter that he was aware of the theft. *Id.* at 7:3–7. Saucedo further testified that Defendant's practice allowed him to physically restrain shoplifters "once they pass[ed] the register, if [they were] trying to leave ...." *Id.* at 7:19–20. At that point, he continued, he would question a suspected shoplifter. *Id.* at 8:1. Moreover, regardless of the price of the merchandise the shoplifter appeared to have taken, Saucedo testified that he would still stop them. *Id.* at 8:6. In accordance with these practices, Saucedo said that he "tried to grab Compton," as he attempted to flee because he "knew [Compton] was ... going to run away from the incident." *Id.* at 14:24–25, 15:1. To prevent Compton's escape, Saucedo "grabbed his legs and ... pushed down," at which point Compton fell to the floor. *Id.* at 15:8–11.

Conversely, Plaintiff offers evidence of a more definite policy regarding shoplifters. Resp. 10–14. In her deposition, Macias explained Defendant's policy for handling shoplifters, including some of the procedures: greeting customers as they walk in, checking bags and receipts as customers walk out, and apprehending shoplifters and calling the police at the appropriate time. *Id.* at 10; Resp. Ex. 3, at 26, 11:7–25, 12:14–25, 13:1–5, ECF No. 41–2 ("Macias Deposition"). Macias also testified that employees of Defendant "are allowed to call the police for a certain amount of money, if it's over $25." Resp. 10; Macias Dep. 11:18–19. Shoplifters suspected of stealing less than $25.00 of merchandise were sim-

ply told to exit the Store in order to avoid hassle and keep customers safe. Macias Dep. 13:1–4, 38:2–7. Though Macias testified to seeing Compton with more than $25.00 worth of items, *see id.* at 14:19–22, the Police Report indicated that the recovered merchandise was $2.00 of Reese's Pieces candy, *see* Police Report at 2.

Whether employees violated store policy has proven to be an important factor for courts to consider in the few fleeing shoplifter cases considering foreseeability. *McClure*, 608 S.W.2d at 904; *Berly*, 876 S.W.2d at 189; *see also Nguyen*, 2014 WL 4202538, at *2 (noting that the store had broken its policy prohibiting running). In *McClure*, one of two shoplifters caught stealing resisted a "peaceful apprehension" and fled the store with two store security guards in close pursuit. *Id.* at 903. The shoplifter led the two guards on a high speed foot chase through a busy mall, during which the shoplifter collided with the plaintiff. *Id.* at 903. The Texas Supreme Court found that, viewing the evidence in the light most favorable to the jury's findings of negligence and negligent supervision, "both ... security guards[ ] failed to act in accordance with the policies and procedures for apprehension of shoplifters" adopted by the store. *Id.* at 904. From this evidence, the court determined that the foreseeability prong of proximate cause, as well as the cause-in-fact prong, had some factual support. *Id.* 903–04.

In the instant case, as in *McClure*, a fleeing shoplifter knocked Plaintiff down while being chased by Defendant's security guard. *See McClure*, 608 S.W.2d at 903; Police Report 2. Here, however, Plaintiff has presented evidence that Defendant violated established policy, Saucedo Dep. 8:6, which conflicts with evidence that Store policy was, in fact, followed, Macias Dep. 14:19–22. As explained above, Macias's testimony that she saw Compton with more than $25.00 in merchandise differs

from the police report documenting $2.00 of recovered merchandise. Macias Dep. 14:19–22. Had Saucedo pursued and detained Compton when he did not suspect that Compton had stolen over $25.00, he would have been violating the policy outlined by Macias, the Store manager. *See* Macias Dep. 11:18–19. Moreover, Saucedo testified that he pursued any person suspected of shoplifting, not just those persons stealing more expensive merchandise, which supports Plaintiff's version of the facts, and, in itself, appears to be a violation of policy. Saucedo Dep. 8:6. As in *McClure*, the substance of Store policy and the extent of adherence to it is material to whether an injury to customers or a third party was foreseeable to the Store. 608 S.W.2d at 903. Violating policies designed to minimize the risk of harm to customers, such as the Store's policy balancing customer safety against the value of shoplifting losses, would increase the foreseeable risk. *See* Macias Dep. 38:2–7. Whether the Store policy on shoplifters was violated, and indeed what the Store policy is, are disputed issues of material fact and are thus only appropriately resolved by the finder of fact. *See Kendrick*, 846 S.W.2d at 458.

Related to the question of Store policy, the parties' evidence also presents a dispute as to whether Defendant trained its employees on whatever shoplifting policies it did have in place. Again, though Defendant does not discuss training in its Motion, Defendant does incorporate several pages of Saucedo's deposition by reference. Mot. Summ. J. 2. When asked whether he had "receive[ed] any training on how to deal with shoplifters," Saucedo testified that he had not. *Id.* at 6:20–22. Further, he testified that there were no policy manuals available at the Store detailing loss prevention. *Id.* 7:8–11. He did, however, testify that when he started working at the Store, he was trained on how to interact

with customers and other "basic train-ings." *Id.* 6:8–14. Macias's testimony dif-fers. She testified that there is a current manual regarding loss prevention, called Control Expectations; and, though the manual does not directly address shoplift-ing, a video screened during employee training addressed the issue directly. *Id.* 40:9–25–41:1–8.

Courts have also considered the failure to train employees on existing policies to be a factor in determining foreseeability. *Berly*, 876 S.W.2d at 186–87; *McClure*, 608 S.W.2d at 903. The instant case is similar to *Berly v. D & L Security Services and Investigations, Inc.*, in which a shoplifter, after escaping the detention of a security guard at a supermarket, shot and killed an employee during his attempt to flee. 876 S.W.2d at 181.[6] The court there recounted evidence that the supermarket and its se-curity contractor failed to train the securi-ty guard, including expert testimony that the security guard was not trained and that the death would have been "preventa-ble" if correct procedures had been used. *Id.* at 186–87. In its analysis, the court found that deviation from the policy—com-bined with frequent criminal acts at the store—created a genuine issue of material fact as to the foreseeability prong of proxi-mate cause. *Id.* at 188.

Here, as in *Berly*, some evidence exists that the security guard, Saucedo, was not trained on company policy. *See id.* at 186–87; Saucedo Dep. 6:8–14. There is also evidence that had Defendant and Saucedo followed the policy not to detain shoplifters with merchandise worth less than $25.00, Plaintiff's injury would have been "pre-ventable" because Compton might not have fled. *See Berly*, 876 S.W.2d at 186–87. Further, a failure to train Saucedo on the policy could have led to his unwitting viola-tion of it. *See id.* Because the evidence presents differing accounts of Saucedo's training, whether Defendant failed to train Saucedo is appropriate for resolution by the trier of fact. *See Kendrick*, 846 S.W.2d at 458.

#### b. Breach

Defendant also asserts that the negli-gence claim fails because "Plaintiff is un-able to show that Defendant breached any duty to Plaintiff in that Defendant failed to exercise reasonable care to reduce or elim-inate a risk of harm." *See* Mot. Summ. J. 4. In other words, Defendant explains, it "did not fail to exercise reasonable care to re-duce or eliminate the risk of harm because they could [*sic*] anticipate that a shoplifter would knock a customer to the ground as he attempted to run out of the store." *Id.* at 5. Thus, Defendant's sole argument as to breach is that Plaintiff cannot prove breach because Defendant had no duty. *See id.* Because the Court found that the evidence raised a fact issue as to foresee-ability, which must be resolved to deter-mine duty, the Court rejects Defendant's argument that breach was necessarily im-possible.

#### c. Proximate cause

Finally, to the extent that Defendant intended to argue that Plaintiff cannot prove proximate cause as a matter of law, this argument fails as well. *See* Mot. Summ. J. 4–5. Defendant does not mention proximate cause in its Motion for Sum-mary Judgment. *See id.* Neither does De-fendant argue that Plaintiff cannot prove cause in fact nor refer to cause in fact at any point. *See id.* However, Defendant hints that Plaintiff cannot meet one ele-ment of proximate cause—foreseeability—

---

**6.** Though the *Berly* court did not perform a full analysis of the shopkeeper's privilege claim put forth by the defendant *D & L*, it concluded that because there was a material fact issue as to the reasonableness of the security guard's actions, the privilege would have come into doubt for the same reason. *Berly*, 876 S.W.2d at 190.

when it states that it argues that it "could [not] anticipate that a shoplifter would knock a customer to the ground as he attempted to run out of the store." *See id.* at 5. In her Response, Plaintiff argues that "Defendant's negligence in handling the shoplifting incident … was a proximate cause of this incident and Plaintiff's injuries." *See* Resp. 2.

■ "Proximate cause has two elements: cause in fact and foreseeability." *Urena*, 162 S.W.3d at 551; *Travis*, 830 S.W.2d at 98; *McClure*, 608 S.W.2d at 903. The Supreme Court of Texas has held that the foreseeability analysis under duty is the same as the foreseeability analysis under proximate cause. *Holder*, 5 S.W.3d at 659 ("The 'foreseeability' analysis is the same for both duty and proximate cause."); *Garcia v. Cross*, 27 S.W.3d 152, 157 (Tex. App. 2000). Therefore is it appropriate, in determining if an injury was foreseeable, for a court to "simply refer[ ] to its previous discussion of foreseeability under 'duty,' " rather than "repeat its analysis [of foreseeability] verbatim." *Mellon*, 5 S.W.3d at 659. Accordingly, because the Court found that there was a genuine issue of material fact as to foreseeability under its analysis of duty, the Court need not "repeat its analysis." *See id.* Instead, relying on the analysis of duty above, the Court finds likewise that there is a genuine issue of material fact as to foreseeability as an element of proximate cause. As a result, Defendant has failed to demonstrate that Plaintiff cannot prove proximate cause as a matter of law.

Because Defendant has failed to establish that negligence is an improper cause of action under the facts or to negate any element of Plaintiff's negligence claim, the Court denies Defendant's Motion for Summary Judgment as it applies to the negligence claim.

### 3. Premises liability claim fails as a matter of law

Next, Defendant argues that Plaintiff's premises liability claim fails as a matter of law because Defendant did not have actual or constructive notice of an unreasonably dangerous condition on the premises. *See* Mot. Summ. J. 5–6. Specifically, Defendant argues that its "summary judgment evidence conclusively negates the element of actual or constructive notice of an unreasonably dangerous condition," because it "did not actually know nor could [it] have known that the shoplifter was going to push a customer over as he ran through the store." *See id.* at 6. Defendant asserts that "Plaintiff did not and cannot provide any evidence that Defendant had actual notice of any danger of the shoplifter knocking a customer to the ground." *See id.* at 5–6. Finally, Defendant argues that "Plaintiff must prove that the danger of the shoplifter knocking a customer to the ground existed for a sufficient period of time so that Defendant had a reasonable opportunity to discover it." *Id.* at 6 (citing *Wal–Mart v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002)).

Plaintiff argues that Defendant was aware of the dangerous condition because "Defendant created the dangerous condition by designing and building a bottle-necked exit to prevent shoplifters from escaping," and "by maintaining its premises with an overload of merchandise spread out throughout narrow areas of the store, limiting customer movement to the controlled bottle-neck area." *See* Resp. 16. Plaintiff explains that Defendant "designed and maintained a store in which the location of the cashier registers, checkout counters, racks, and customer standing area were so tightly connected that a shoplifter would be required to push someone out of the way to escape," and that "Defendant maintained [its] store far too crowded

with merchandise and lacking sufficient space for customers to freely move out of the way in the course of a shoplifting incident." *Id.* To support these assertions, Plaintiff includes photographs of the Store in her summary judgment evidence. *See* Resp. Ex. 13.

In addition to the dangerous condition created by the design of the Store, Plaintiff also asserts that Defendant was aware of the dangerous condition created by shoplifters in the Store, explaining that "Defendant w[as] well aware that shoplifting incidents were common and frequent at this location." Resp. 16. In support of this assertion, Plaintiff cites to Macias's and Saucedo's statements regarding the frequency of shoplifting at the Store. *See id.* (citing Macias Dep. 10:6–18; Saucedo Dep.—Pl.'s Excerpt 56–57).

 In a premises liability case, as in a negligent activity case, "the plaintiff must establish a duty owed to the plaintiff, breach of the duty, and damages proximately caused by the breach." *Del Lago*, 307 S.W.3d at 767; *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983) (establishing the elements of premises liability under Texas law). "Under a premises-defect theory, however, the scope of the duty is more singularly defined: the plaintiff must establish that (1) the premises owner or operator had actual or constructive knowledge of the complained-of condition; and (2) the complained—of condition posed an unreasonable risk of harm." *Murillo*, 449 S.W.3d at 592 (citing *Olivo*, 952 S.W.2d at 529); *Del Lago*, 307 S.W.3d at 767; *Urena*, 162 S.W.3d at 550. Thus, a property owner owes its invitee "a duty to exercise reasonable care to protect her from dangerous conditions in the store

that were known or reasonably discoverable, but [is] not an insurer of her safety." *Reece*, 81 S.W.3d at 814; *Esparza v. 846274 Texas, Inc.*, No. 07-98-0066-CV, 1998 WL 906994, at *4 (Tex. App. 1998). "When the alleged injury is the result of the *condition* of the premises, the injured party can recover only under a premises liability theory." *Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 163 (Tex. App. 2011) (emphasis added).[7] This theory covers the physical attributes of the premises: "[a]rtful phrasing of the pleadings to encompass alleged design defects or any other theory of negligence does not affect the application of premises liability." *E.I. DuPont de Nemours & Co. v. Roye*, 447 S.W.3d 48, 58 (Tex. App. 2014).

 Landowners must have either actual or constructive knowledge of the condition. *Murillo*, 449 S.W.3d at 592. Proof that the premises owner or occupier "created a condition which poses an unreasonable risk of harm may constitute circumstantial evidence that the owner of occupier knew of the condition." *Keetch*, 845 S.W.2d at 266. "[Cr]eating the condition," though, "does not establish knowledge as a matter of law." *See id.* at 267 (Cornyn, J., concurring) ("A person's awareness of a condition cannot necessarily be inferred from the fact that he created it . . . ."). In proving that a landowner had constructive knowledge of a condition, Texas courts apply the "time-notice" rule. *Reece*, 81 S.W.3d at 815. The rule requires that the dangerous condition existed for "some length of time before a premises owner may be charged with constructive notice." *Id.* Further, Texas courts have indicated

---

7. That this is true does not, however, support Defendant's contention that a plaintiff is *limited* to a premises liability cause of action in this case: "An owner or occupier of land in control of the premises may be liable for *two* types of negligence in failing to keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect." *Olivo*, 952 S.W.2d at 527 (emphasis added).

that landowners must not only be aware of the condition but must also be aware of the "unreasonable risk of injury" it poses. *See CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000) (finding that an owner's knowledge of the unreasonableness of the risk of harm is a prerequisite to finding premises liability). That previous incidents in similar circumstances engendered the same type of harm or risk "bear[s] . . . on the reasonableness of the care exercised by the owner or occupier to make the premises safe." *Id.*

■ However, as with ordinary negligence, the duty to protect invitees from conditions that pose an unreasonable risk of harm "does not extend to protection against criminal acts of third parties who are not under the defendant's control, unless they know or have reason to know of an unreasonable risk of harm to the invitee." *Esparza*, 1998 WL 906994, at *4 (citing *Lefmark*, 946 S.W.2d at 53). According to the Texas Supreme Court, there is "no duty" to protect invitees from third parties except in these circumstances. *Del Lago*, 307 S.W.3d at 767.

■ The Court finds Plaintiff has failed to meet her summary judgment burden. According to Plaintiff, the allegedly dangerous condition is the Store's layout itself, including: (1) the placement of the fixtures such as registers and aisles within the Store; and (2) the overcrowding of merchandise on the shelves. *See* Resp. 14–20.

However, Plaintiff produces no evidence that Defendant was aware that the Store design could result in crowding the front in a way that might prevent shoplifters from escaping. Regarding Defendant's design intentions, she offers conclusory statements not supported by any evidence. In her Response, Plaintiff states "Defendant created the dangerous condition . . . to prevent shoplifters from escaping." *See* Resp. 16. Such is the extent of her posi-

tion. Nor does she offer evidence that Defendant, when building this particular location, would have had reason to know that fleeing shoplifters would be likely to push through customers to flee the Store—nor indeed likely to frequent this location at all. *See generally* Resp. To the extent that Plaintiff's premises liability claim constitutes "[a]rtful phrasing" of a negligent design claim, her action cannot be maintained. *Roye*, 447 S.W.3d at 58.

Even accepting that the dangerous condition Plaintiff alleges is the Store's layout, rather than its design, Plaintiff does not argue that the layout poses an unreasonable risk to invitees, in the way that a puddle of liquid might. *See* Resp. 16–17. Rather, Plaintiff argues the layout poses an unreasonable risk *when considered in conjunction* with potential shoplifting over which Defendant does not have control. *Id.* at 15–20. To support this argument, Plaintiff must proffer some evidence that the Store knew, or should have known, of the unreasonable risk that the layout would funnel shoplifters into customers. *See Esparza*, 1998 WL 906994, at *4 (citing *Lefmark*, 946 S.W.2d at 53).

However, Plaintiff has not presented evidence of awareness a dangerous condition or awareness of an unreasonable risk. *See Daenen*, 15 S.W.3d at 101. Plaintiff points out that shoplifters had been caught and arrested several times at the Store. *See* Macias Dep.—Pl.'s Excerpt 26, 10:6–18. However, because the Court considers a premises liability cause of action, it considers only the condition of the premises itself. *See, e.g., Roye*, 447 S.W.3d at 51 (noting that Plaintiff was injured when "burned by hot condensate that had collected in a pool underneath one of the pipelines"). Defendant's awareness as to whether the presence of shoplifters was generally foreseeable is not relevant. *See Corbin*, 648 S.W.2d at 296 (laying out the

elements of premises liability under Texas law). The Store's layout, as a condition, must have itself placed the Plaintiff at an "unreasonable risk of harm." *Murillo*, 449 S.W.3d at 592. Plaintiff does not proffer any evidence in the record to show that the past thefts alerted or should have alerted Defendant to the risk of harm at issue here. *See generally* Resp. Shoplifters' behaviors, writ large, cannot be classified as a "condition" of the premises—there must be some evidence of a clearer risk to customers due to the way shoplifters interact with the Store layout in order to raise the possibility of premises liability in this case.

Because Plaintiff does not produce evidence that Defendant knew or should have known that a condition on the premises posed an unreasonable risk, Plaintiff's premises liability claim fails as a matter of law.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 41, is **GRANTED** in part and **DENIED** in part. The Motion is granted as to Plaintiff's premises liability claim and denied as to negligent activity claim.

**IT IS FURTHER ORDERED** that Defendant's Motion for Hearing, ECF No. 56, is **DENIED** as moot.[8]

The Court will issue a Trial Preparation Order and an order to attend a settlement conference by separate orders.

**SO ORDERED.**

---

8. The Court again notes that, because Macias was not properly joined in this case, these orders apply to Defendant Dollar Tree only.